United States District Court
Southern District of Texas
**ENTERED**
March 25, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:21-cv-00192

BROCK QUALLS, *PLAINTIFF*,

v.

PREWETT ENTERPRISES, INC., D/B/A B&P ENTERPRISES, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant's motion to transfer this case to the Northern District of Mississippi under Rule 12(b)(3) and 28 U.S.C. § 1404(a). Dkt. 5. The court grants the motion.

## I.    Background

The plaintiff, Brock Qualls, worked for the defendant, Prewett Enterprises, Inc., d/b/a B&P Enterprises, as a sales representative from June 2017 to October 2019. Dkt. 1-1, ¶ 5 (Plaintiff's Original Petition); Dkt. 5-3. B&P, which "specializes in railroad construction and maintenance services," is a Tennessee corporation with a principal place of business in Mississippi. Dkt. 1 at 2. It also maintains offices in Illinois, Missouri, Arkansas, Alabama,

Louisiana, and Texas. Dkt. 6-1 at 5 (Declaration of Brock Qualls). B&P's Texas office is in the Dallas-Fort Worth area. *Id.*

During his time with B&P, Qualls solicited and secured railroad-construction jobs in various states, including Texas. *Id.* at 3. He alleges B&P agreed to pay him a 2% commission on the jobs he secured. Dkt. 1-1 at 5–6. In 2018, Qualls secured a railroad remediation bid with Texas City Railway Terminal, a job for which B&P was allegedly paid $13,000,000. *Id.* at 5. Qualls alleges, however, that B&P refused to pay him about $260,000 of his commission, despite his repeated demands. *Id.* Qualls sued B&P in state court in Galveston County alleging four causes of action: (1) breach of contract; (2) an alternative claim for quantum meruit; (3) fraud; and (4) violation of the Texas Sales Representative Act, Tex. Bus. & Com. Code Ann. § 54.001 *et seq*. Dkt. 1-1 at 5–7.

B&P removed the action to this court, Dkt. 1 at 1–2, and now moves to transfer venue to the Northern District of Mississippi. Dkt. 5 at 1.

## II. Standard of Review

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In considering a § 1404(a)

motion to transfer, a district court should normally begin by evaluating both the convenience of the parties and various public-interest considerations." *Davis v. Valsamis, Inc.*, 181 F. Supp. 3d 420, 425 (S.D. Tex. 2016) (citing *Atl. Marine Const. Co. v. U.S. D. for W.D. Tex.*, 571 U.S. 49, 62–63 (2013)).

But when evaluating a motion to transfer that cites a forum-selection clause, the court must adjust its analysis. *Id.* "A forum-selection clause is a significant factor that figures centrally in the district court's calculus." *Davis*, 181 F. Supp. 3d at 424–25 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). "The court must first determine whether a contractually valid forum-selection clause exists." *Buc-ee's, Ltd. v. Bucks, Inc.*, 262 F. Supp. 3d 453, 460 (S.D. Tex. 2017) (citing *Atl. Marine*, 571 U.S. at 62–63). If one does, the court must determine whether this case falls within its scope. *Id.* (citing *Atl. Marine*, 571 U.S. at 62–63).

> When facing a valid and enforceable forum-selection clause:
>
> (1) the [p]laintiff's choice of forum carries no weight and [the] plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) a court should not consider arguments about the parties private interests instead deeming any private-interest factors to weigh entirely in favor of the preselected forum, and (3) a transfer of venue will not carry with it the original venue's choice-of-law rules.

*Davis*, 181 F. Supp. 3d at 425 (citing *Atl. Marine*, 571 U.S. at 62–64).

If a valid and enforceable clause is not found, the court must return to the standard § 1404(a) analysis and determine "if the judicial district sought by the movant is one in which the case could have originally been brought." *Buc-ee's*, 262 F. Supp. 3d at 462 (citation omitted). "If the court determines the transferee district is one in which the case could have originally been brought, the court must determine by balancing certain public and private factors whether the convenience of the parties and witnesses, and the interest of justice require that the case be tried elsewhere." *Id.* (internal quotation and citation omitted). "A party moving to transfer bears the burden of demonstrating to the Court that a transfer is warranted." *Id.* (citation omitted). "Unless the balance of factors strongly favors the moving party, the [p]laintiff's choice of forum generally should not be disturbed." *Houston Trial Reps., Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 667–68 (S.D. Tex. 1999) (citing *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1065 (S.D. Tex. 1996)).

## III. Analysis

### a. Forum-Selection Clause

In its motion to transfer, B&P asserts that the current dispute is governed by a forum-selection clause contained within the "Non-Compete, Non-Disclosure and Confidentiality Agreement" (hereinafter, the

"Agreement") Qualls signed at the outset of his employment. Dkt. 5, Ex. A-1. But Qualls argues that the Agreement is irrelevant to his claim in this lawsuit. Dkt. 6 at 14. The Agreement, Qualls contends, pertains only to the proprietary, confidential, intellectual, or solicitation information obtained during his employment and does not touch on compensation. *Id.*

Normally, before the court can consider enforcing a forum-selection clause, it must first determine that the clause is valid. *Davis*, 181 F. Supp. 3d at 425. (citing *Atl. Marine*, 571 U.S. at 62–64). But here, Qualls does not dispute that a valid forum-selection clause exists within the agreement. Dkt. 6 at 14. Instead, he contends only that his claims do not fall within the scope of the forum-selection clause. *Id.* Accordingly, the court will focus on whether the scope of the clause encompasses the dispute and thus compels transfer.

"The scope of a forum[-]selection clause is not limited solely to claims for breach of the contract that contains it." *MaxEn Cap., LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (citation omitted). Rather, courts look to the language of the forum-selection clause to determine its scope. *Buc-ee's*, 262 F. Supp. 3d at 460 (citing *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (per curiam)). Forum-selection clauses that cover disputes that "relate to" an

agreement are generally interpreted broadly, while clauses that use the language "arising out of" an agreement are construed narrowly. *Id.* (citation omitted). But the forum-selection clause in the agreement contains both phrases:

> 8. **<u>Venue and Jurisdiction.</u>** Any and all claims *arising out of* or *related to* this agreement shall be brought in the Courts of DeSoto County, Mississippi; exclusively.

Dkt. 5-2 at 8 (emphasis added). So the clause contains language intimating both narrow and broad constructions. The court will look at both.

Applying a narrow construction, the court finds that the plaintiff's claims do not "arise out of" the agreement because they do not require the court to interpret the agreement to adjudicate the case. *Buc-ee's*, 262 F. Supp. 3d at 460–61. Instead, the plaintiff's claims stem from an alleged oral agreement for compensation. Dkt. 1-1 at 5–6. B&P has not contested the existence of this alleged oral agreement nor has B&P alleged that specific provisions of the agreement are at issue in the lawsuit. *See generally* Dkt. 6. When a plaintiff's claims do not refer to the instrument containing the forum-selection clause and are not "controlled, managed, or governed by" that instrument, they do not "arise out of" it. *Buc-ee's*, 262 F. Supp. 3d at 460–461 (quoting OXFORD DICTIONARY (3d ed 2010)).

The phrase "related to" signals that the forum-selection clause should be interpreted broadly. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). "Such clauses are broad, encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to' . . . the contract." *MaxEn Cap*, 2009 WL 936895, at *6 (cleaned up). "When such language is present, courts do not allow parties to avoid the clause by 'artful pleading' of claims to avoid basing them on the contract containing the clause." *Id.* at *6 (citing *Roby v. Corp of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993)); *see Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 442 (5th Cir. 2008) (holding that a forum-selection clause in an attorney-client contract specifying that disputes "for the enforcement and/or breach of this contract" must be filed in Louisiana state court applied in the clients' malpractice suit against the attorney).

> [C]ourts have held that a contractually[ ]based forum[-]selection clause will also encompass tort claims if those claims ultimately depend on the existence of a contractual relationship between the parties, if resolving those claims relates to the interpretation of the contract, or if those tort claims involve the same operative facts as a parallel claim for breach of contract.

*MaxEn Cap*, 2009 WL 936895, at *6.

Even when applying a broad construction of the forum-selection clause, Qualls' claims fall outside its scope. For one, Qualls does not rely on the agreement as a basis for the duties he seeks to have enforced. Dkt. 1-1 at 5–6. Instead, Qualls' breach-of-contract claim arises out of the alleged oral compensation contract. *Id.* Qualls' claims for fraud and violation of the Texas Sales Representative Act also hinge on the same supposed oral compensation agreement. The Agreement's plain language bolsters this conclusion. For one thing, it is not even labeled a compensation agreement. Its title is "Non-Compete, Non-Disclosure, and Confidentiality Agreement," and its text pertains to only those subjects. The Agreement contains no language discussing compensation or even matters tangential to compensation; it covers only confidentiality. *See, e.g.*, *S. Air Charter Co. Ltd. v. Airforce Turbine Serv., Ltd.*, No. 2:16-CV-87, 2017 WL 5649607, at *3-4 (S.D. Tex. May 8, 2017) (holding that a forum-selection clause in a lease agreement titled "Engine 4" did not apply to disputes over Engines 1 and 3).

This case is distinguishable from *MaxEn Cap*, in which the court found that the plaintiff's claims of fraud and breach of an oral contract were "related to" the written consulting agreement containing the forum-selection clause. 2009 WL 936895, at *6–7. There, the claims relied on language from the consulting agreement, depended on the contractual relationship

established by the consulting agreement, and would require interpretation of the consulting agreement. *Id.*; *see also Flowbee Int'l, Inc. v. Google, Inc.*, No. C-09-199, 2010 WL 11646901, at *3 (S.D. Tex. Feb. 8, 2010) (holding that plaintiff's claims for trademark infringement were "related to" an advertising agreement containing a forum-selection clause, where all of the claims hinged on information set forth in the advertising agreement). Here, on the other hand, B&P neither attempts to tie Qualls' claims to the terms of the agreement nor argues that adjudicating the claims requires interpretation of the agreement. Moreover, it appears to the court that an attempt at either would be futile.

As they neither "arise from" nor "relate to" the Agreement, Qualls' claims do not fall within the scope of its forum-selection clause.

### b. Section 1404(a) Analysis

Having found that no contractually valid forum-selection clause applies, the court turns to whether it should still transfer Qualls' claims. B&P contends the case should be transferred to the Northern District of Mississippi based on the convenience of the parties. Dkt. 5 ¶ 1.

Under 28 U.S.C § 1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district where it may have been brought." 28 U.S.C § 1404(a).

The initial determination under § 1404(a) is whether the plaintiff's claim could have been filed in the judicial district where transfer is sought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A business entity "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). General jurisdiction for an entity can be established where the corporation is "fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation is considered "at home" in its place of incorporation and where it has its principal place of business. *Id.* B&P's principal place of business is Walls, Mississippi. Dkt. 1 at 7; Dkt. 6 at 2. Because B&P is subject to personal jurisdiction in Walls, Mississippi, it is a resident of the Northern District of Mississippi under § 1391(c)(2). Accordingly, Qualls' claims could have originally been filed in the Northern District of Mississippi.

The court next turns to the language of § 1404(a), looking to issues of convenience. "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 241 (1981)). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* "The plaintiff's choice of venue is not a factor in this analysis. Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue." *Fausto v. Parko Grp., LLC*, No. 3:18-CV-00323, 2019 WL 6686678, at *2 (S.D. Tex. Oct. 31, 2019) (citation omitted).

### i. Private-Interest Factors

A. *The Relative Ease of Access to Sources of Proof*

"The first [private-interest] factor focuses on the location of the relevant 'documents and physical evidence' relative to the transferee and transferor venues." *In re Orion Marine Constr., Inc.*, No. 3:20-CV-00309, 2020 WL 8083679, at *3 (S.D. Tex. Dec. 21, 2020) (citation omitted). B&P

contends that all the documents and physical evidence relevant to Qualls'
employment can be found at its principal place of business in Mississippi.
Dkt. 5 at 2, 10. B&P's "managers, officers, payroll, and human resources" are
all located there. *Id.* at 2. Moreover, Mississippi is where Qualls signed and
received documents relevant to his employment, such as the agreement and
a termination letter; where Qualls reported to his supervisor; and where B&P
processed its payroll and payments to Qualls. *Id.* at 9–10.

Qualls does not dispute B&P's claims that there are relevant
employment documents in Mississippi. Dkt. 6 at 9. Rather, he contends that
advancements in technology have rendered this factor less important. *Id.* But
the Fifth Circuit has ruled that technological advancements neither lighten
the weight of this factor nor render it "superfluous." *In re Volkswagen of
Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008). "Whether the files 'can be faxed
or sent by other electronic means' will not preclude a conclusion that the
location of the files weighs in favor of transfer." *Rosemond v. United Airlines,
Inc.*, No. H-13-2190, 2014 WL 1338690, at *2 (S.D. Tex. Apr. 2, 2014) (citing
*In re Toa Techs., Inc.*, No. 13–153, 2013 WL 5486763, at *2 (Fed. Cir. Oct.3,
2013)). The key question is "relative ease of access, not absolute ease of
access." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citing
*Volkswagen*, 545 F.3d at 316); *see Sandbox Logistics LLC v. Grit Energy*

*Sols. LLC*, No. 3:16-CV-12, 2016 WL 4400312, at *3 (S.D. Tex. Aug. 17, 2016) (holding that "even if some or a majority of the documentary evidence is stored electronically, this does not negate the significance of having trial closer to where [Grit's] physical documents and employee notebooks are located, because the critical inquiry is relative ease of access, not absolute ease of access" (cleaned up)).

Qualls also makes some reference to the possibility that Texas City Railroad Terminal possesses some relevant documents. Dkt. 6 at 10. But he does not explain what the documents concern or how they are related to his claims. *Id*. That leaves the court to conclude that most of the relevant employment documents, including payroll records, are in the Northern District of Mississippi. This factor strongly favors transfer.

### B. Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses

The second private-interest factor considers the availability of compulsory process over non-party witnesses. "The Federal Rules of Civil Procedure provide district courts with the authority to compel non-party witnesses 'to attend a trial, hearing, or deposition' that is conducted 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.'" *Orion*, 2020 WL 8083679, at *4; Fed. R. Civ. P. 45(c)(1)(A). "This factor will weigh heavily in favor of transfer when more

third-party witnesses reside within the transferee venue than reside in the transferor venue." *Orion*, 2020 WL 8083679, at *4 (cleaned up).

B&P has identified no non-party witnesses that reside, are employed, or regularly transact business within 100 miles of the Northern District of Mississippi. But Qualls has identified two Texas City Railroad Terminal employees as non-party witnesses who reside and work in the Galveston Division and would be beyond the subpoena authority of the Northern District of Mississippi. Dkt. 6 at 8. Because they are the only non-party witnesses who have been identified by either party, this factor weighs against transfer.

### C. Cost of Attendance for Willing Witnesses

The third private-interest factor examines the cost of attendance for willing witnesses and is "probably the single most important factor in the transfer analysis*." Sandbox*, 2016 WL 4400312, at *5 (citation omitted). When the distance to be traveled is beyond 100 miles, inconvenience to witnesses increases in direct relationship to the added distance to be traveled. *Volkswagen*, 371 F.3d at 204. This includes additional travel time, meal and lodging expenses, and time away from the witnesses' regular employment. *Id.* "In considering the convenience of witnesses, however, the relative convenience to key witnesses and key non-party witnesses is

accorded greater weight" than the convenience to less important witnesses. *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 762–63 (S.D. Tex. 2009) (citations omitted). "To designate a potential witness as 'key' under the inquiry, 'the movant must specifically identify the key witnesses and outline the substance of their testimony.'" *Hillestad v. LLOG Expl. Co., LLC*, No. 3:17-CV-00341, 2018 WL 4938708, at *4 (S.D. Tex. Sept. 20, 2018) (citations omitted). Courts in this district have held that "the convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Rosemond*, 2014 WL 1338690, at *3 (quoting *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009); *Fausto v. Parko Grp., LLC*, No. 3:18-CV-00323, 2019 WL 6686678, at *3 (S.D. Tex. Oct. 31, 2019).

B&P has designated Joshua Prewett, Qualls' supervisor, who resides in Mississippi, as a key witness who has knowledge of Qualls' employment performance, payroll and commission history, and the circumstances of his termination. Dkt. 5 at 12. B&P contends that this factor favors transfer as it would be costly for Prewett to travel to Galveston. *Id.* at 11–12. But Qualls argues that the inconvenience of bringing the two Texas Railroad Terminal non-party witnesses to Mississippi outweighs the inconvenience of B&P bringing one of its employees to Galveston. Dkt. 6 at 8. The rub is, of course,

that Qualls has not explained why he needs the non-party witnesses' testimony, described what it will entail, or even suggested that they would indeed willingly travel to Mississippi. *See Hillestad*, 2018 WL 4938708, at *4 (holding that the "mere location of the non-parties' workplace, without more, is simply insufficient to demonstrate" the transfer would be convenient); s*ee also Fausto,* 2019 WL 6686678, at *4 (finding that where the defendant failed to show inconvenience to non-party witnesses, the inconvenience to the party, because of increased hotel costs and car-rental expenses, tipped the scale in favor of transfer, though it was entitled to very little weight). Accordingly, this factor slightly favors transfer.

### D. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

In analyzing this factor, courts consider whether transfer would cause a delay in litigation for the parties. *Radmax,* 720 F.3d at 289. That said, "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. Were it, delay would mitigate against transfer in every case." *Id.* Instead, the delay associated with transfer may be relevant "in rare and special circumstances," such that a transfer would cause another delay in protracted litigation. *Id.* (citing *In re Horseshoe Ent.*, 337 F.3d 429, 435 (5th Cir. 2003)). As nothing the parties have asserted moves the needle on this point, this factor is

neutral.

### ii. Public-Interest Factors

#### A. *The Administrative Difficulties Flowing from Court Congestion*

This factor asks "not whether transfer will reduce a court's congestion, but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad*, 2018 WL 4938708, at *7 (citing *Rosemond*, 2014 WL 1338690, at *4). When evaluating this factor, courts often look to the median interval time between filing a case to disposition in considering this factor. *Rosemond*, 2014 WL 1338690, at *4 (citing *ExpressJet Airlines, Inc. v. RBC Cap. Mars. Corp.*, No. H–09–992, 2009 WL 2244468, at *12 (S.D. Tex. July 27, 2009)). The median time between filing and disposition in the Southern District of Texas is 8.8 months, while it is 10.7 months in the Northern District of Mississippi, a difference of about two months.[1] "This difference in disposition time is negligible and does not weigh in favor of or against transfer." *ExpressJet*, 2009 WL 2244468, at *12 (holding that a 2.2-month difference is neutral, favoring neither district); *see also Rosemond*, 2014 WL 1338690, at *4 (finding this factor neutral where the difference in

---

[1] FED. COURT MGMT. STATISTICS, JUDICIAL CASELOAD PROFILE: DISTRICT COURTS (2021), available at https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2021.

disposition times between districts was only 2.1 months). This factor is neutral.

### B. The Local Interest in Having Localized Interests Decided at Home

"This public[-]interest factor considers whether the dispute at issue has a closer 'factual connection' with the transferee or the transferor venue." *Orion*, 2020 WL 8083679, at *6 (citing *Volkswagen*, 371 F.3d at 206). "The location of the alleged wrong is of 'primary importance.'" *Boutte*, 346 F. Supp. 2d at 933 (citation omitted). "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Hillestad*, 2018 WL 4938708, at *8 (citation omitted). While the record at this point is unclear as to where the alleged oral contract was entered into, much of the operative facts surrounding Qualls' employment took place in the Northern District of Mississippi. Dkt. 5 at 5, 7, 9–10. Qualls' employment was managed out of Mississippi, he reported to his supervisor in Mississippi, and his payroll was processed and paid out of Mississippi. *Id.* Thus, the Northern District of Mississippi has a strong, local interest in deciding this case. *See Rosemond*, 2014 WL 1338690, at *5 (holding that a flight attendant's suit against her employer for sexual harassment "during flight" was in the local interest of the transferee venue where the employee's supervisor was located, the events giving rise to the claim took place, and where the employees, including the

plaintiff, worked).

The only connection this case has to this district is that Texas City Railway Terminal is here. Dkt. 1-1. But Qualls fails to explain how where the bid was secured matters and or why it gives the Southern District of Texas a strong, localized interest in the case. Dkt. 6 at 8. Moreover, though Qualls alleges that he is moving to Texas, he did not live in Texas when he worked for B&P or when the alleged injury occurred. Dkt. 6-1. *See ExpressJet*, 2009 WL 2244468, at *12–13 (holding that plaintiff's suit for fraud and breach of contract in the sale of large auction-rate securities was not in the local interest of where the fraudulent materials were received, but where the sales transaction occurred).

Because Qualls' claims arise from his employment with B&P, and he has not persuaded the court that Texas has any strong, localized interest in the case, the Northern District of Mississippi has a closer factual connection. This factor favors transfer.

### C. The Familiarity of the Forum with the Law that will Govern the Case

As Qualls originally sued in Texas state court and contends that Texas law applies, including the Texas Sales Representative Act, Tex. Bus. & Com. Code Ann. § 54.001 *et seq*., he argues that this factor weighs against transfer. Dkt. 6 at 13. But the courts of this district have held that as federal courts are

experienced in applying the laws of other jurisdictions, transfer is not necessarily favored or disfavored due to the application of another state's law. *See ExpressJet*, 2009 WL 2244468, at *13 (holding this factor neutral where the Southern District of New York "would have no difficulty applying the Texas law at issue" to the plaintiff's breach-of-contract and fraud claims and concluding that Texas state-law claims alone do not favor the Texas venue because "federal district courts, particularly when sitting in diversity, often apply foreign law in resolving controversies"); *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 712 (S.D. Tex. 2011) (holding that if Illinois law were applicable to the plaintiff's causes of action, it would not necessarily warrant transfer to Illinois as the transferor court "is fully equipped to research and interpret the laws of other states").

Moreover, it is not clear that Texas law applies to this case. A federal court sitting in diversity applies the choice-of-law rules of the forum state. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Texas courts follow the *Restatement (Second) of Conflict of Laws* and "apply the law of the state with the most significant relationship." *Id.* (citing *Maxus Expl. Co. v. Moran Bros.*, Inc., 817 S.W.2d 50, 53 (Tex. 1991)). Similarly, Mississippi also embraces the *Restatement* and applies a "center of gravity

approach" to determining "which state has the most substantial contacts with the parties and subject matter of the action." *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) (citation omitted). Here, Qualls' claims arise from his employment in Mississippi. That is where B&P's supervisors and managers reside and work and where the employment documents relevant to the claim are maintained. Dkt. 5 at 7, 9–10. Although Qualls' claims implicate a Texas statute, the facts of the case point to the application of Mississippi law to the contract and tort claims. *See Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 663–64 (S.D. Tex. 2003) (holding that Mexican law would likely govern plaintiff's suit for negligence, strict liability, and violation of various Texas statutes where Mexico was the place the injury occurred, the aircraft was maintained, the airline was based, and the plaintiffs were from).

Regardless of which state's law applies, the court is confident that both it and the Northern District of Mississippi would have little trouble handling it. So this factor is neutral.

### D. The Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties have offered no arguments pertaining to this factor and have identified no conflict-of-law issues for either venue. So this factor is also neutral.

\* \* \*

The court finds that three factors favor transfer, one factor weighs against transfer, and four factors are neutral. And as the two most important factors in the venue analysis—cost of attendance to witnesses and the local interest in having the claims decided at home—support transfer, the court further finds that a transfer to the Northern District of Mississippi would best serve "the convenience of parties and witnesses, in the interest of justice." *Volkswagen*, 545 F.3d at 311 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

Accordingly, the court grants the defendant's motion to transfer venue, Dkt. 5, and orders that this action is transferred to the Northern District of Mississippi.

Signed on Galveston Island this 25th day of March, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE